UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Admiral Insurance Company, a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> Capital City Renewables, Inc., a Wisconsin corporation; David Evanshank, an Illinois resident; and Barbara Czykier, an Illinois resident, on behalf of three minor children, A. R., P. R., and E. C., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Case No.  1:24-cv-05601 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

Plaintiff, Admiral Insurance Company ("Admiral"), by and through its attorneys, seeks entry of judgment in its favor and against Defendants Capital City Renewables, Inc. ("Capital City"), David Evanshank ("Evanshank"), and Barbara Czykier ("Czykier") on behalf of three minor children A.R., P.R., and E.C., pursuant to 28 U.S.C. § 2201. In support thereof, Admiral states as follows.

## NATURE OF THE ACTION

1. This matter involves insurance coverage for an underlying personal injury lawsuit brought by Czykier on behalf of her three minor children against Evanshank and Capital City, under case number 2022L009614 in the Circuit Court for Cook County, Illinois (the "Underlying Lawsuit").

2. Czykier's complaint in the Underlying Lawsuit alleges that Evanshank and Capital City are legally responsible for injuries her minor children sustained in a motor vehicle accident

that took place on September 11, 2022, near Northbrook, Illinois. A true and correct copy of Czykier's operative First Amended Complaint is attached hereto as Exhibit A.

3. Czykier, Evanshank, and Capital City maintain that the Underlying Lawsuit is covered under excess liability policy no. FEI-EXS-27413-03 issued by Admiral to Capital City effective from September 11, 2022 to September 11, 2023 (the "Admiral Excess Policy"). A true and accurate copy of the Admiral Excess Policy is attached hereto as Exhibit B.

4. Admiral disputes that the Admiral Excess Policy provides coverage for the Underlying Lawsuit because:

　　a. Capital City obtained the Admiral Excess Policy based on the fraudulent and material misrepresentation that Capital City was insured on a primary basis under a specified policy for four light trucks with a $1 million combined single limit;

　　b. The Admiral Excess Policy terminated automatically before the accident as a result of Capital City's independent decision to cancel the primary automobile liability policy without notifying Admiral or obtaining an endorsement to continue coverage; and

　　c. The Admiral Excess Policy did not insure bodily injury from accidents involving the truck that Evanshank drove for Capital City at the time of the accident for reasons that include the following:

　　　　(i) The truck involved in the accident had never been listed as an insured vehicle on the specified underlying policy;

　　　　(ii) The truck involved in the accident was not a "light" truck as represented in the application for policy renewal; and

　　　　(iii) The Insured did not own any insurance policy for the truck involved in the accident.

5. Accordingly, Admiral now seeks a judgment: (1) reforming the Admiral Excess Policy to remove the excess coverage for auto liability, (2) declaring that Admiral has the right to rescind the Admiral Excess Policy in its entirety, or (3) declaring that the terms of the Admiral Excess Policy do not obligate Admiral to pay any judgment or settlement in the Underlying Lawsuit.

## THE PARTIES

6. At all times material to this action, Plaintiff Admiral was and is an insurance company organized and incorporated under the laws of Delaware, with its principal place of business located in Arizona.

7. At all times material to this action, Defendant Capital City was and is a corporation organized and incorporated under the laws of Wisconsin, with its principal place of business located in Maine.

8. At all times material to this action, Defendant Evanshank was a citizen of and domiciled in Illinois.

9. At all times material to this action, Czykier and her three minor children, A.R., P.R., and E.C., are citizens of and domiciled in Illinois.

## JURISDICTION AND VENUE

10. This action is brought pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

11. This Court has jurisdiction over this action, pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity exists between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

12. There is complete diversity of citizenship between the parties because Admiral is a citizen of Delaware and Arizona and Defendants are citizens of Illinois, Maine, and Wisconsin.

13. Further, the amount in controversy exceeds $75,000, exclusive of interest, costs, and fees, because the limit of the Admiral Excess Policy is $4 million and the plaintiff in the Underlying Lawsuit has demanded that Admiral pay its full limit.

14. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to this lawsuit—i.e., the facts and circumstances described in the Underlying Lawsuit and policy limits settlement demand from Czykier—occurred in this judicial district.

## FACTUAL BACKGROUND

### *The Accident*

15. On September 11, 2022, Czykier's three minor children were passengers in a Dodge Durango traveling in the lefthand northbound lane on I-294 near Northbrook, Illinois.

16. The Durango spun out, contacted another car, and ended up perpendicular to northbound traffic on I-294, in the subject truck's travel lane.

17. At the time of the spin-out, Evanshank, a Capital City employee, was driving northbound on I-294 in a 2006 International 7300 flatbed truck and attached trailer that Capital City leased from Power Systems, LLC (the "Power Systems Truck").

18. While driving the Power Systems Truck, Evanshank hit the Dodge Durango carrying Czykier's three minor children.

### *The Artisan Auto Policy*

19. Before the accident, Capital City had purchased primary automobile liability policy number 958356448 from Artisan and Truckers Casualty Insurance Company ("Artisan") for the period from May 23, 2022 to May 23, 2023 (the "Artisan Auto Policy").

20. The Artisan Auto Policy provided Capital City with a $1 million combined single limit for bodily injury and property damage from accidents involving insured vehicles.

21. On information and belief, the vehicles insured under the Artisan Auto Policy included four light trucks owned by Capital City (a 2002 Ford F350, a 2002 Ford F550SD, a 2011 Ford F350, and a 2017 Toyota Tundra) but not the Power Systems Truck.

22. Effective July 7, 2022, Capital City canceled the Artisan Auto Policy.

23. Capital City obtained lesser replacement coverage for its four light trucks from separate State Farm Mutual Automobile Insurance Company policies (the "State Farm Policies").

24. The State Farm Policies had limits of $250,000 per person and $500,000 per accident.

25. Like the Artisan Auto Policy, the State Farm Policies effective at the time of the accident did not insure injuries from accidents involving the Power Systems Truck.

### *Capital City's Renewal of the Admiral Excess Policy*

26. Before the accident, Capital City was also insured under an excess liability policy issued by Admiral that provided coverage in excess of the Artisan Auto Policy.

27. This excess policy was set to expire on September 11, 2022.

28. Accordingly, on August 30, 2022, Capital City's broker submitted to Admiral an application to renew its excess policy with Admiral. A true and correct copy of the renewal application submitted to Admiral by Capital City's broker on August 30, 2022, is attached hereto as Exhibit C.

29. Although Capital City had canceled the Artisan Auto Policy effective July 7, 2022, the renewal application identified Capital City's underlying automobile insurance as the Artisan Auto Policy.

30. The renewal application described the Artisan Auto Policy as effective from May 23, 2022 to May 23, 2023, with a $1 million combined single limit.

31. The renewal application further stated that Capital City owned four "light" trucks used "locally."

32. The renewal application did not reference the Power Systems Truck or any other flatbed truck.

33. Admiral used the information in the renewal application to prepare a quote for an excess liability policy.

34. On September 7, 2022, Admiral issued a quote to Capital City, through its broker, for a $4 million excess policy with a $6,000 premium. A true and correct copy of the quote is attached hereto as Exhibit D.

35. The quote specified that automobile liability would be provided in excess of an underlying automobile insurance with a minimum combined single limit of $1 million.

36. The quote was subject to Admiral's receipt and review of an application signed and dated by Capital City within twenty days of binding. The quote stated that, upon receipt and review of the requested information, Admiral "reserve[s] the right to modify these terms and conditions in accordance with our underwriting guidelines."

37. Effective September 9, 2022, Admiral bound coverage for Capital City pursuant to the terms of the quote. A true and correct copy of the email binding coverage is attached as Exhibit E.

38. The email binding coverage requested, among other information, a signed and dated excess insurance application within twenty days.

39. On September 11, 2022, Capital City's broker submitted a signed and dated application to Admiral. A true and correct copy of the signed application is attached hereto as Exhibit F.

40. The signed application identified Capital City's underlying automobile insurance policy as the Artisan Auto Policy with a $1 million combined single limit.

41. The signed application further stated that Capital City owned four "light" trucks used "locally."

42. The signed application did not reference the Power Systems Truck or any other flatbed truck.

43. On September 15, 2022, Admiral issued a formal binder. A true and correct copy of the binder is attached hereto as Exhibit G.

44. The binder stated: "Coverage is based on the information you provided to us and on which we have relied." It further stated: "If any material information has been excluded or if any of the information provided is now inaccurate, please advise us immediately in order that we may seek revalidation of terms."

45. On September 22, 2022, Admiral issued the Admiral Excess Policy.

46. The Insuring Agreement of the Admiral Excess Policy provides:

> The Company shall provide the *Insureds* with insurance during the *Policy Period* excess of the *Underlying Limit*. Coverage hereunder shall attach only after the insurers of the *Underlying Insurance* shall have paid in legal currency the full amount of the *Underlying Limit* for such *Policy Period*. Coverage hereunder shall then apply in conformance with the terms and conditions of the *Primary Policy*.

47. The Admiral Excess Policy defines *Underlying Insurance* as "all policies scheduled in Item 5. of the Declarations and any policies of the same insurers replacing or renewing them."

48. The Admiral Excess Policy defines *Primary Policy* as the policy scheduled in Item 5. of the Declarations or any policy of the same insurer replacing or renewing such policy.

49. Item 5. of the Declarations identifies the Artisan Auto Policy as Capital City's primary automobile liability insurance.

50. The Admiral Excess Policy also contains the following provisions:

> **II. Maintenance of Underlying Insurance**
>
> > All *Underlying Insurance* shall be maintained in full effect during the *Policy Period* and shall afford the same coverage provided by all *Underlying Insurance* in effect upon inception of this *Policy Period*, except for any depletion or exhaustion of the *Underlying Limit* solely by reason of payment of losses thereunder.
>
> > \* \* \*
>
> **IX. Notice**
>
> > The *Insureds* shall, as a conditions precedent to exercising their rights under this policy, give to the Company written notice as soon as practicable of the cancellation of any *Underlying Insurance*, any notice given under any *Underlying Insurance* and additional or return premiums charged or paid in connection with any *Underlying Insurance*.
>
> > \* \* \*
>
> **XII. Policy Termination**
>
> > This policy shall terminate at the earliest of the following times:
> > \* \* \*
>
> > d. thirty days after the effective date of any alteration or termination of any *Underlying Insurance*, whether by the *Insureds* or any insurer of the *Underlying Insurance*, unless the Company (i) receives written notice of such alteration or termination from the *Named Insured*, (ii) receives such information as the Company reasonably requests, and

> (iii) agrees, pursuant to an endorsement, not to terminate this policy;

\* \* \*

### *The Underlying Lawsuit*

51. On October 26, 2022, Czykier sued Evanshank in the Underlying Lawsuit to recover for injuries her three minor children allegedly sustained in the September 11, 2022 accident.

52. On May 23, 2023, Czykier filed her operative First Amended Complaint, adding Capital City as a defendant.

53. The operative First Amended Complaint alleges that, at the time of the accident, Evanshank was driving the Power Systems Truck on behalf of Capital City.

54. It further alleges that, due to his speed and failure to keep a proper lookout, Evanshank did not stop and crashed into the car carrying Czykier's three minor children.

55. It further alleges that the accident caused her three minor children "permanent and lasting" injuries.

56. Capital City served interrogatory responses in the Underlying Lawsuit, a true and correct copy of which is attached hereto as Exhibit H.

57. Those interrogatory responses state that the Subject Truck is owned by Power Systems and leased to Capital City.

### *Defendants' Claims for Coverage*

58. On September 18, 2023, Capital City notified Admiral of the Underlying Lawsuit.

59. Admiral immediately initiated a coverage investigation.

60. During Admiral's coverage investigation, Capital City advised Admiral *for the first time* that Capital City had canceled the Artisan Auto Policy referenced on the Admiral Excess Policy's Schedule of Underlying Insurance.

61. On December 13, 2023, and again on April 3, 2024, Admiral requested that Capital City advise it of the date it canceled the Artisan Auto Policy so that it could evaluate the impact of the cancellation on coverage.

62. On April 25, 2024, Czykier demanded the $4 million limit of the Admiral Excess Policy to settle the Underlying Lawsuit.

63. As of April 25, 2024, Admiral had not learned the effective date of the Artisan Auto Policy's cancellation.

64. Admiral thus contacted Artisan directly for the same information.

65. On May 17, 2024, Admiral learned from Artisan that Capital City canceled the Artisan Auto Policy effective July 7, 2022, at Capital City's request.

66. Because Capital City canceled the Artisan Auto Policy on July 7, 2022, more than two months before the accident, Admiral, through its counsel, rejected Czykier's policy limits demand on May 23, 2024.

67. The letter to Czykier's counsel explained that, per Section XII of the Admiral Excess Policy, Capital City's July 7, 2022 cancellation of the Artisan Auto Policy automatically terminated the Admiral Excess Policy before the September 11, 2022 accident.

### COUNT I – DECLARATORY RELIEF
**(Automatic Termination)**

68. Admiral repeats and re-alleges the allegations set forth in Paragraphs 1-67 above as though specifically set forth herein.

10

69. Unless Admiral receives written notice of an alteration or termination of any underlying insurance and endorses the Admiral Excess Policy to continue in force and effect, the Admiral Excess Policy automatically terminates thirty days after the effective date of the alteration or termination of any underlying insurance.

70. The Artisan Auto Policy was underlying insurance.

71. The Artisan Auto Policy was canceled more than thirty days before the accident at issue in the Underlying Lawsuit.

72. Capital City did not provide Admiral with timely written notice of the Artisan Auto Policy's cancellation.

73. Admiral did not agree to continue the Admiral Excess Policy in force or effect after the cancellation of the Artisan Auto Policy.

74. Admiral did not endorse the Admiral Excess Policy to continue in force and effect despite the cancellation of the Artisan Auto Policy.

75. Therefore, the Admiral Excess Policy automatically terminated before the accident.

76. On information and belief, Defendants dispute that the Admiral Excess Policy terminated before the accident.

**WHEREFORE,** Admiral respectfully requests that this Court enter judgment in its favor declaring that the Admiral Excess Policy was terminated before the accident on September 11, 2022, and, therefore, that the Admiral Excess Policy does not cover the Underlying Lawsuit.

### COUNT II – DECLARATORY RELIEF
**(Subject Truck Not Covered)**

77. Admiral repeats and re-alleges the allegations set forth in Paragraphs 1-67 above as though specifically set forth herein.

78. The Admiral Excess Policy covers only those claims covered by scheduled underlying insurance.

79. The scheduled underlying Artisan Auto Policy does not insure the Power Systems Truck.

80. Therefore, the Admiral Excess Policy does not insure the Power Systems Truck.

81. On information and belief, Defendants dispute that the Admiral Excess Policy does not insure the Power Systems Truck.

**WHEREFORE,** Admiral respectfully requests that this Court enter judgment in its favor declaring that the Admiral Excess Policy does not cover the Subject Truck and, therefore, that the Admiral Excess Policy does not cover the Underlying Lawsuit.

## COUNT III– REFORMATION (IN THE ALTERNATIVE)

82. Admiral repeats and re-alleges the allegations set forth in Paragraphs 1-67 above as though specifically set forth herein.

83. When it issued the Admiral Excess Policy, Admiral mistakenly believed that Capital City had primary auto liability insurance from Artisan with a $1 million combined single limit.

84. This mistaken belief was caused by Capital City's false representation to Admiral that Capital City was insured under the Artisan Auto Policy.

85. But for this false representation, Admiral would not have included excess auto liability coverage in the Admiral Excess Policy.

86. Admiral's mistake of fact, caused by Capital City's false representation to Admiral, requires in equity that the Admiral Excess Policy be reformed to remove the excess auto liability coverage.

12

**WHEREFORE,** Admiral respectfully requests that this Court enter judgment in its favor, reforming the Admiral Excess Policy to: (1) provide insurance coverage solely in excess of commercial general liability and employer's liability policies identified on the Admiral Excess Policy's declarations page and (2) remove excess liability coverage for auto liability.

### COUNT IV – DECLARATORY RELIEF (IN THE ALTERNATIVE)
### (Right to Rescind)

87. Admiral repeats and re-alleges the allegations set forth in Paragraphs 1-67 above as though specifically set forth herein.

88. In its application for insurance, Capital City represented to Admiral that it was insured under the Artisan Auto Policy for the period from May 23, 2022 to May 23, 2023.

89. In its application for insurance, Capital City further represented to Admiral that the combined single limit of its underlying automobile liability policy was $1 million.

90. In its application for insurance, Capital City further represented to Admiral that it only had four "light" trucks.

91. The representations described in paragraphs 30-32 and 40-42 were material.

92. The representations described in paragraphs 30-32 and 40-42 were false.

93. The representations described in paragraphs 30-32 and 40-42 were fraudulent.

94. But for the representations in paragraphs 30-32 and 40-42, Admiral would not have quoted, bound, or issued the Admiral Excess Policy.

95. On information and belief, Plaintiffs dispute one or more of the allegations contained in paragraphs 88 to 94.

96. Admiral is ready, able, and willing to return the premium that Capital City paid for the Admiral Excess Policy.

**WHEREFORE,** Admiral respectfully requests that this Court enter judgment in its favor, declaring that Admiral has the right to rescind the Admiral Excess Policy.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Admiral respectfully requests that this Court enter judgment in its favor:

1) Declaring that the Admiral Excess Policy does not cover the Underlying Lawsuit; or

2) Alternatively, reforming the Admiral Excess Policy so that it does not cover the Underlying Lawsuit; or

3) Alternatively, declaring that Admiral has a right to rescind the Admiral Excess Policy.

Admiral also respectfully requests that the Court grant it any further relief as it deems just.

DATED: July 3, 2024                                    Respectfully submitted,

                                                        /s/ David M Alt

                                                        David M. Alt
                                                        Colleen Sorensen
                                                        BATESCAREY LLP
                                                        191 North Wacker, Suite 2400
                                                        Chicago, IL 60606
                                                        312.762.3100 (telephone)
                                                        312.762.3200 (facsimile)
                                                        *Attorneys for Plaintiff,*
                                                        *Admiral Insurance Company*